LOUIS LEWIS ET AL., PROSECUTORS, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK ET AL.

Argued December 12, 1906—Decided March 9, 1907.

1. *Certiorari* is the proper remedy for testing the validity of an ordinance, resolution or motion adopted by a municipal body, although the action under review may affect, collaterally, the right to an office.

2. A general act relative to municipalities, passed in pursuance of article 4, section 7, paragraph 11, of the state constitution, will repeal all inconsistent provisions in municipal charters whether there are words of express repeal or not.

3. What publication requisite before an ordinance becomes operative in the city of Newark.

On *certiorari.*

Before Justices FORT, PITNEY and REED.

For the prosecutors, *Frederick T. Johnson.*

For the defendants, *Chandler W. Riker* and *Joseph L. Munn.*

The opinion of the court was delivered by

FORT, J. The writ in this case brings up two matters of municipal action of the common council of the city of Newark for review:

*First.* The passage of an ordinance to divide the city into wards, and to increase the number of wards to sixteen.

*Second.* A motion, so called, passed December 3d, 1906, as follows: "Moved. That Reuben Odel be elected freeholder to represent the Sixteenth ward of the city of Newark, to fill vacancy."

The ordinance was adopted November 30th, 1906, and approved by the mayor upon the same day. The return shows that the ordinance was introduced on November 30th, and, under suspension of the rules, given three readings and passed.

The power of the common council to pass an ordinance for the division of the city into wards, and increasing the number of wards to sixteen, is not questioned. The authority is expressly conferred by statute. *Pamph. L.* 1895, *p.* 311.

The authority to adopt the motion of December 3d, 1906, to elect Mr. Odel to the office of freeholder, depended upon the existence of at least two basal facts, namely—*first,* that the ordinance passed November 30th, 1906, was in force on December 3d, 1906; and *second,* that it had created a vacancy. If for any reason it had not become operative on December 3d, of course there was no vacancy to fill, because there was no office existent to be vacant. The office of freeholder from the Sixteenth ward was created by the ordinance

of November 30th, 1906, and had no legal existence until and after said ordinance became operative.

It is contended that the ordinance of November 30th, 1906, was not in force on December 3d, 1906, because it had not been published as required by law, to be operative on that date.

By the charter of the city of Newark, passed in 1836 (*Pamph. L., p.* 185, § 14), it is provided that before any ordinance shall take effect it shall be published for twenty days after its approval in two daily newspapers printed and published in the city.

In 1871 (*Pamph. L., p.* 600), the charter was amended to require publication for ten days only.

In 1881 (*Pamph. L., p.* 295), an act was passed entitled "An act concerning the publication of ordinances, financial statements and other public notices." By the first section of this act it is provided that "In all cities of this state the ordinances passed by the city councils thereof shall be published in at least one newspaper printed and published in the city affected by said ordinance, for at least two insertions, before said ordinance shall become operative and binding." It needs no argument to show that under this section, if it applies, there must be two insertions in the same newspaper.

We are unable to escape the conclusion that this law is applicable to Newark, and if it is, the ordinance creating the Sixteenth ward in Newark was not in force at the time that the motion was adopted appointing Odel a freeholder to fill the vacancy in that office which would exist when the Sixteenth ward was established, conceding that the creation of a ward would of itself create such a vacancy. The testimony of the city clerk, Mr. Connolly, at pages 15 and 17 of Book 1, makes it clear that this ordinance was not published by two insertions in any newspaper except the "Newark Morning Star." It was published in the "Newark Morning Star" on Saturday and Monday mornings, December 1st and 3d, 1906, and if this newspaper were one in which such publications could be legally made under the statute it might be sufficient; but the third section of the act of 1881 declares

that the newspapers publishing such ordinances shall have been published for a period of two years before any such publication can be legally made therein.

By an act passed in 1895, which relates by its title and in the body of the act to the publication of ordinances in cities of the first class only (*Pamph. L., p.* 773), it is enacted that "It shall not be necessary in any city of the first class to publish any ordinance * * * now required by law to be published in any newspapers, to hereafter publish such ordinances * * * for a longer space than five days, nor for more than five insertions in the daily official newspapers of such city." This act, however, we do not think requires any publication to be made in excess of two insertions, in cases of ordinances, as provided by the act of 1881, but is only a limitation upon existing statutes which may require even more than five days' publication.

The act of 1895 would, undoubtedly, if the act of 1881 did not exist, reduce the ten days' publication required by the act of 1871 to five days or five insertions. But what the real effect of the act of 1895 may be is immaterial in this case, if the act of 1881 as a matter of fact has not been complied with.

By an act entitled "An act determining what newspapers shall be qualified to publish legal notices and proceedings," passed June 13th, 1895 (*Pamph. L., p.* 803), it is provided that all newspapers printed in the English language, and regularly printed and published in this state at least once a week, and which shall have been so printed and published for at least one year continuously, shall be qualified to publish all legal notices and advertisements of whatever nature, required to be published by any local government or by any officer or board or commission. This act undoubtedly reduces the two years of continuous publication in the act of 1881 to one year, but we are unable to find any other modifications in the statutes, and our conclusion is that to make a legal publication of ordinances in cities of the first class, the newspaper must be published in the English language, continuously, for a period of one year prior to the publication, in order that the two insertions published in it shall give effect to the ordinance.

The "Morning Star" had only been published at the time of the publication of the ordinance in question for about two months. The suggestion is that it is published by the "Newark Advertiser" as a morning edition of that paper, and there is testimony on that question, but, clearly, such a view cannot be sustained. The titles are different and the newspapers are unquestionably separate and distinct within the contemplation of the laws governing the publication of ordinances above cited.

It is suggested on the brief that the first section of the act of 1881 is unconstitutional, in that the body of the act is not as broad as its title. The title is: "An act concerning the publication of ordinances, financial statements and other public notices," and the first section is that, in all cities of this state, the ordinances, &c., shall be published, &c. We do not think that this section is unconstitutional for the reason urged, even under the opinion in the case of *Beverly* v. *Waln,* 28 *Vroom* 143, and as that case was distinguished by the Court of Errors and Appeals in *Johnson* v. *Asbury Park,* 31 *Id.* 427 (at *p.* 432), we are clear that this act is not unconstitutional. Nor is it unconstitutional within the principle stated in *Coutieri* v. *New Brunswick,* 15 *Id.* 58.

That the act of 1881 repeals the provisions of the charter of the city of Newark on the same subject is clear—*first,* on the ground that it is a repealer by implication, under the rule stated in the case of *Morris and Essex Railroad Co.* v. *Commissioners of Railroad Taxation,* 8 *Vroom* 228, and *second,* expressly, as we think, under the decision of the Court of Errors and Appeals in *Haynes* v. *Cape May,* 23 *Id.* 180, wherein it is held that general statutes relative to municipalities passed in pursuance of article 4, section 7, paragraph 11, of the state constitution, will repeal all inconsistent provisions in city charters, whether there are words of express repeal or not. That case holds that general statutes dealing with the subject-matter of a prior special law will be considered as evincing a legislative intent to supersede them, and thus will abrogate and annul them.

There being no Sixteenth ward in the city of Newark in

legal existence on December 3d, 1906, there was no vacancy in the office of freeholder to fill, and hence no power in the council, at the time, to adopt a motion to elect or appoint any person to fill it. *State* v. *Jersey City, 5 Dutcher* 170.

This leaves but a single question to be considered, viz., can this matter be inquired into on *certiorari?* It is contended that it cannot, because it involves the title of Odel to the office of chosen freeholder, and that that can only be inquired into upon *quo warranto.*

We do not think the proceeding does involve the title to office. The prosecutors, as citizens and taxpayers, seek to set aside what they allege to be illegal municipal action. They do not directly attack Mr. Odel's title to an office in the possession and user of which he actually is.

In *Haines* v. *Freeholders, 18 Vroom* 454, Mr. Justice Scudder says: "There must be a *user* as well as a claim of a franchise to found an application for an information in nature of a *quo warranto,*" citing *Rex* v. *Whitwell, 5 T. R.* 84; *Updegraff* v. *Crans, 47 Pa. St.* 103.

But the same learned justice also says, in that case, that "collateral questions affecting the right to an office may be sometimes raised, either by *certiorari* or *mandamus,* in testing the validity of the ordinances and resolutions of municipal bodies, as in *O'Donnell* v. *Dusman, 10 Vroom* 677, and *Trowbridge* v. *Newark, 17 Id.* 140."

In *Fitzgerald* v. *New Brunswick, 18 Vroom* 479, proceedings were allowed to test the validity of the action of the common council in declaring vacant the office of chief of police and patrolmen of the city of New Brunswick and appointing another chief and other patrolmen to fill their places. Both resolutions were brought up on *certiorari* and both resolutions were vacated.

On error in the Court of Errors and Appeals in that case it was vigorously contended that *certiorari* would not lie, and a full discussion on the question will be found in the briefs of counsel, in 19 *Vroom,* at *pp.* 458 and 471. It is true that Chief Justice Beasley, in his opinion in that case, does not discuss the question of whether *certiorari* will lie, but he

does say: "Other objections taken in the brief of counsel have been duly considered, but being deemed plainly unsustainable, their discussion seems unnecessary." *Fitzgerald* v. *New Brunswick,* 19 *Vroom* (at *p.* 489). And a statement of that kind by that distinguished and careful jurist shows they were considered and deemed without force.

In the case before us, even if the office had been found to legally exist at the time the motion appointing Odel was adopted, there was no incumbent against whom Odel could commence *quo warranto* proceedings, and we think that Odel, by taking the oath of office and attempting to meet with less than a quorum of others, claiming to be freeholders, was not in the possession and user of the office of chosen freeholder in such a sense as to make it proper to institute *quo warranto* proceedings against him. But, whether such proceedings could have been instituted against him or not, upon his taking the oath of office, is not a proper matter for discussion here, nor is it necessary for us to consider it.

The question of Odel's title is merely collateral to the issue here for determination. We have to do with the legality and right of the council to pass the ordinance and motion only. The authority to pass the ordinance is not questioned; the power to adopt the motion at the time they did was clearly not existing in the common council. The writ here seeks to vacate this illegal exercise of authority, and we think that is within the power of the court on *certiorari.*

In reaching this result, we have not overlooked the question raised by the prosecutor as to whether a vacancy can exist in the Sixteenth ward, as created by the ordinance of November 30th, which can be filled, either by election or appointment, prior to the expiration of the term of the chosen freeholders elected in the territory of which the Sixteenth ward was a part at the time of the election of chosen freeholders, in November, 1906. *Vander Bach* v. *Chosen Freeholders,* 36 *Vroom* 523. Nor have we deemed it necessary in this case to determine the controverted question as to the beginning of the term of chosen freeholders in counties of the first class, in a proceeding challenging only the power

of the common council of the city of Newark to fill vacancies in that board. Nor has it been thought necessary, under the result here reached, to pass upon the question of whether the ordinance of November 30th was one involving the expenditure of money within the provision of the city charter requiring publication of such ordinances between their second and third reading. Having found that the motion to appoint Odel was void, even conceding the ordinance valid, it becomes unnecessary to pass upon these several questions, which could only affect the legality of the ordinance itself.

As to the defendant the Board of Chosen Freeholders of Essex County, they being neither a proper nor necessary party to the proceeding, the writ is dismissed.

As to the other defendant, the action of the mayor and common council of the city of Newark, in passing the ordinance of November 30th, 1906, is not passed upon, but the motion of December 3d, 1906, having been illegally adopted before the ordinance of November 30th, 1906, was operative to create any office under it, the same is vacated and set aside.

None of the parties will be allowed costs as against the other.